UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MILTON ISAAC | CIVIL ACTION |
| VERSUS | NO. 26-377 |
| RAYBURN CORRECTIONAL CENTER, *et al.* | SECTION M (1) |

**ORDER & REASONS**

Having considered the complaint, the record, the applicable law, the magistrate judge's Report and Recommendation ("R&R"),[1] and the objection of defendant Louisiana Department of Public Safety and Corrections ("DPSC") to the R&R,[2] the Court hereby overrules DPSC's objection, approves the R&R, and adopts it as its opinion in this matter as explained below.

## I. BACKGROUND

Isaac, who is incarcerated at Rayburn Correctional Center ("RCC"), is asserting claims against DPSC, RCC, Warden Travis Day, Sergeant Young, and Captain Spears under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), and section 504 of the Rehabilitation Act ("RA").[3] Isaac has filed multiple Administrative Remedy Procedure ("ARP") grievances during his incarceration.[4] And he alleges that he submitted one such ARP grievance on November 2, 2025 (the "November 2, 2025 grievance") as evidenced by the grievance attached to his complaint in the captioned matter.[5] The November 2, 2025 grievance describes, almost verbatim, most of the events that appear in his complaint.[6] Isaac filed suit on February 19, 2026.[7] That same day he also filed a motion for temporary restraining order.[8] On April 23, 2026, DPSC

---

[1] R. Doc. 25.
[2] R. Doc. 26.
[3] R. Doc. 1.
[4] *See, e.g.*, R. Doc. 1-1 at 10-17.
[5] R. Doc. 1-1 at 14-17.
[6] *See id.*; R. Doc. 1 at 3-4.
[7] R. Doc. 1.
[8] R. Doc. 3.

filed a motion for summary judgment.[9] The magistrate judge issued the R&R addressing these two motions on July 6, 2026.[10]

## II. THE REPORT AND RECOMMENDATION

In addressing the motion for a temporary restraining order, the magistrate judge properly recommended that this Court deny Isaac's motion because it fails to show a likelihood of success on the merits, substantial injury, that the danger of any threatened harm outweighs the potential harm to the defendants for granting it, and that an injunction would not undermine the public interest.[11] No parties objected to this portion of the R&R.

Regarding DPSC's motion for summary judgment, the R&R properly recommends that DPSC's motion be granted in part and denied in part and that plaintiff Milton Isaac's motion for a temporary restraining order be denied. The magistrate judge found that Isaac failed to exhaust his administrative remedies as to ARP requests #RCC-2024-540, #RCC-2024-570, and #RCC-2025-623[12] and that this failure procedurally bars Isaac's claims because he did not provide evidence that such remedy was essentially unavailable.[13] The R&R also explains that although Isaac properly exhausted ARP requests #RCC-2023-143 and #RCC-2025-083, the claims related to #RCC-2023-143 fail due to prescription under Louisiana law[14] and those related to #RCC-2025-083 fail because the Eleventh Amendment of the U.S. Constitution grants DPSC immunity from claims arising under 42 U.S.C. § 1983.[15] Addressing the claims against RCC, the magistrate judge explains that these claims "fail as a matter of law" because RCC is not a juridical person under Louisiana law and it is state law that determines whether an entity has the "capacity to sue

[9] R. Doc. 11.
[10] R. Doc. 25.
[11] *Id.* at 33-36.
[12] *See id.* at 15-16.
[13] *Id.* at 17.
[14] *Id.* at 20.
[15] *Id.* at 22.

or be sued."[16] And the R&R recommends that Isaac's claim for retaliation be dismissed because Isaac fails to identify which defendants allegedly retaliated against him.[17]

The R&R also recommends that most of the claims against Day, Young, and Spears should be dismissed. The magistrate judge explains that the Eleventh Amendment bars the ADA and RA claims and the § 1983 claims against Day, Young, and Spears in their official capacities.[18] And the magistrate judge concludes that Isaac's § 1983 claims against Day in his individual capacity should be dismissed because Isaac did not allege that Day was personally involved "in the events and conditions complained of,"[19] and because Day is not liable under a *respondeat superior* theory since Isaac did not allege that Day issued an order or implemented a policy that caused Isaac's alleged injury.[20] As to Isaac's claims under § 1983 against Young and Spears, the magistrate judge found that the alleged verbal abuse Isaac described in his complaint did not rise to a level of constitutional concern,[21] but that his allegations regarding their deliberate indifference to his medical needs are sufficient to merit further development.[22]

The R&R goes on to recommend that this Court deny DPSC's summary-judgment motion as it relates to the claims described in Isaac's November 2, 2025 grievance.[23] The magistrate judge found that the November 2, 2025 grievance was "addressed to the ADA Coordinator" and Day as warden and "appears to comply with" Louisiana's ARP requirements.[24] The R&R also points out that DPSC's motion itself does not specifically address this ARP request, and only in its statement of uncontested facts does DPSC mention that ARP Screening Officer Stacey Rowell

---

[16] *Id.* at 24 (quoting Fed. R. Civ. P. 17(b)).
[17] *Id.* at 31-32.
[18] *See id.* at 25, 32-33.
[19] *Id.* at 30.
[20] *Id.* at 30-31.
[21] *Id.* at 27.
[22] *Id.* at 29.
[23] *Id.* at 18-19, 37.
[24] *Id.* at 20.

never received the November 2, 2025 grievance.[25] Further, the R&R concludes that Isaac's claim that officials did not process some of his ARP requests, when combined with a December 4, 2025 letter to Day concerning his ARP requests on October 23, 2025 and November 10, 2025, shows that there is a dispute of material fact as to whether Isaac exhausted his administrative remedies with respect to the November 2, 2025 grievance.[26] And the magistrate judge found that DPSC fails to explain, in its motion or via affidavit, "how an ARP is submitted or to whom,"[27] and provides "nothing to counter [Isaac's] suggestion that his [November 2, 2025 grievance] was given to Warden Day."[28]

In its objection, DPSC argues that the magistrate judge erred in denying its summary-judgment motion for the claims related to the November 2, 2025 grievance.[29] DPSC contends that Isaac understands the ARP process because he has submitted multiple ARP requests.[30] Therefore, argues DPSC, because the ARP log "does not contain any record of this grievance from [Isaac]," there is no dispute of material fact as to whether he submitted the November 2, 2025 grievance; he did not.[31]

## III. LAW AND ANALYSIS

In cases involving "prisoner petitions challenging conditions of confinement," the district judge may "designate a magistrate judge to conduct hearings … and to submit to [the district judge] proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673 (1980). If a party is dissatisfied with a magistrate judge's report and recommendation, it may file objections within 14 days of being

---

[25] *Id.* at 19 (referring to R. Doc. 11-1 at 2).
[26] *Id.* at 20.
[27] *Id.*
[28] *Id.*
[29] R. Doc. 26-1 at 1.
[30] *Id.* at 5.
[31] *Id.*

served with a copy of the recommendation. Fed. R. Civ. P. 72(b)(2). When timely objections are raised, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b)(1)(C) (emphasis added); Fed. R. Civ. P. 72(b)(3).

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions,

conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoner-plaintiffs must exhaust their administrative remedies before bringing an action under § 1983, or any federal law, for injuries related to prison conditions or events. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Because exhaustion is an affirmative defense, DPSC bears the burden to demonstrate that Isaac failed to exhaust his administrative remedies. *See Cowart v. Erwin*, 837 F.3d 444, 451 (5th Cir. 2016).

Courts look to the prison's grievance procedures "[t]o determine what remedies are 'available' and thus must be exhausted." *Huskey v. Jones*, 45 F.4th 827, 831 (5th Cir. 2022) (quotation omitted); *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015); *Cowart*, 837 F.3d at 451. Louisiana's ARP grievance process, which applies to all facilities operated by the Louisiana Department of Public Safety and Corrections, La. Admin. Code tit. 22, pt. I, § 325(D)(1), is a two-step process, and "a prisoner has not exhausted his remedies until he has completed both." *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019).

Relevant to the instant case is whether Isaac submitted the November 2, 2025 grievance at all. An inmate commences the "process by completing a request for administrative remedy … or writing a letter to the warden." La. Admin. Code tit. 22, pt. I, § 325(G)(1)(a)(i). If the inmate opts to write a letter, it must "contain[] the phrase: 'This is a request for administrative remedy'

or 'ARP'" and "briefly set[] out the basis for his claim, and the relief sought." La. Admin. Code tit. 22, pt. I, § 325(G)(1)(a)(i), (G)(1)(a)(i)((b)). The Administrative Code does not specify to whom the inmate is to give his request, although it does provide that the request is to be made to the warden.

An ARP screening officer then screens the request before it is assigned to the first step and notifies the prisoner that his request has been accepted or rejected. *Id.* § 325(I)(1). The prisoner "has not properly exhausted administrative remedies if his request is rejected for any of the reasons" enumerated in the Administrative Code. *Id.* § 325(I)(1)(c)(iv). The prisoner must correct the noted deficiencies and resubmit his request for remedy to the screening officer, otherwise it "will not be processed," *see id.* § 325(I)(1)(a)(ii), (c)(iii), but the request may still appear within the prison's database.[32] If a prisoner submits a request while a previous request is pending, the subsequent request "will be logged and set aside for handling" after the pending request is exhausted. *Id.* § 325(F)(3)(a)(ix). If this happens, "[t]he warden may determine whether a letter of instruction to the offender is in order," but such a letter is not required. *Id.* The Administrative Code also does not specify the inmate's options should his request be ignored entirely or if it is not handed to the screening officer or logged into the system.

The Supreme Court has held that a prisoner only needs to exhaust "available" remedies. *Ross v. Blake*, 578 U.S. 632, 642 (2016). A remedy is "available" if its "procedures … are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). But a prisoner has no obligation to exhaust "unavailable" remedies. *Id.* A remedy is "unavailable" when "(1) prison officials are unable or consistently unwilling to provide any relief to aggrieved inmates, (2) the administrative scheme is so opaque

[32] *See* R. Doc. 11-3 at 31 (providing an assigned ARP filing number to two of Isaac's rejected requests).

that it becomes, practically speaking, incapable of use by an ordinary prisoner, or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Huskey*, 45 F.4th at 831 (quoting *Hinton v. Martin*, 742 F. App'x 14, 15 (5th Cir. 2018)); *Ross*, 578 U.S. at 643-44.

In this case, the magistrate judge did not reject the *possibility* that Isaac failed to exhaust his administrative remedies, just that she could not so hold at this juncture based on the present record.[33] The magistrate judge correctly found that there is a genuine issue of material fact as to whether Isaac exhausted his administrative remedies for the events alleged in his November 2, 2025 grievance.[34] Although Isaac attached the November 2, 2025 grievance to his initial complaint,[35] DPSC does not address the substance of this request in its motion for summary judgment. Instead, DPSC's statement of uncontested facts states that Rowell never received the November 2, 2025 grievance,[36] which she confirmed in her affidavit attached to the motion.[37]

In his opposition to the motion, Isaac does not directly contest the statement or affidavit, but he again attaches the November 2, 2025 grievance[38] and alleges that his ARP requests "were not processed" and "were ignored or rejected due to backlog," which in his view made the system "effectively unavailable."[39] He also attaches a December 4, 2025 letter that is addressed to Day through which he inquires as to the status of another ARP request he claims to have submitted on October 23, 2025, and resubmitted on November 10, 2025.[40] Like the November 2, 2025 grievance, there is no evidence in the record that RCC ever received the October 23, 2025

---

[33] *See* R. Doc. 25 at 20.
[34] *See id.* at 19-20.
[35] R. Doc. 1-1 at 14-17.
[36] R. Doc. 11-1 at 2.
[37] R. Doc. 11-3 at 4.
[38] R. Doc. 13-1 at 5.
[39] R. Doc. 13 at 4.
[40] R. Doc. 13-1 at 12.

grievance. But DPSC did not file a reply to the motion, nor did it challenge the validity of the letter or October 23, 2025 grievance in its objection to the R&R.

Isaac's allegations regarding the handling of his requests, coupled with the November 2, 2025 grievance and December 4, 2025 letter, raise a genuine dispute of material fact as to whether RCC officials received his November 2, 2025 grievance and whether they failed to process it. The Court acknowledges that the letter does not refer to the November 2, 2025 grievance and only inquires into the status of the grievance allegedly submitted on October 23, 2025.[41] But as someone who, according to DPSC, "is intimately familiar with the ARP process," Isaac's letter suggests he believed that he followed the same procedures in regard to all of his previous requests and was confused as to why he had not received a response, including, presumably, a response to the November 2, 2025 grievance. Further, the copy of the November 2, 2025 grievance filed by Isaac appears to comply with Louisiana's Administrative Remedy Procedure, and it does not materially differ in form from the copies of other requests that RCC officials did process.[42] Based on the record alone, it is not clear to whom RCC's policies require inmates to hand their requests for administrative remedies, whether any such policy was communicated to Isaac, or whether he followed the proper procedure in regard to the November 2, 2025 grievance. Thus, viewing the record in the light most favorable to Isaac, it appears that he understood and followed the same procedure for each of his ARP requests. Without more information, there is nothing in the present record to compel a definitive rejection of his allegation that he submitted the November 2, 2025 grievance.

---

[41] *See id.*

[42] *Compare* R. Doc. 13-1 at 5-8 (a copy of the November 2, 2025, which is addressed to Day and the ADA coordinator, provides the basis for his complaint, and contains the phrase "Request for Administrative Remedy (ARP)"), *with* R. Doc. 11-6 at 1 (a copy of an ARP grievance by Isaac that was filed into the system and is addressed to Day, provides the basis for his complaint, and contains the abbreviation "ARP").

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that DPSC's objection to the R&R (R. Doc. 26) is overruled, and the magistrate judge's R&R is adopted as the Court's opinion in this matter as supplemented above.

IT IS FURTHER ORDERED, then, that DPSC's motion for summary judgment (R. Doc. 11) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Isaac's § 1983 claims against DPSC are DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction and for seeking relief from an immune defendant.

IT IS FURTHER ORDERED that Isaac's claims relating to ARPs #RCC-2025-540 and #RCC-2024-570 are DISMISSED WITH PREJUDICE for failure to exhaust administrative remedies.

IT IS FURTHER ORDERED that any claim related to ARP #RCC-2025-623 is DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies, but WITH PREJUDICE for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.

IT IS FURTHER ORDERED that Isaac's § 1983, ADA, and RA claims against RCC are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Isaac's ADA and RA claims against Day, Young, and Spears, in their official and individual capacities, are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Isaac's claims for monetary damages against Day, Young, and Spears in their official capacities are DISMISSED WITHOUT PREJUDICE pursuant to the Eleventh Amendment and Rule 12(b)(1).

IT IS FURTHER ORDERED that Isaac's individual-capacity federal civil-rights claims

against Day are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED THAT Isaac's federal civil-rights claim for retaliation is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Isaac's civil-rights claim for verbal abuse against Young and Spears in their individual capacities is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Isaac's motion for temporary restraining order and preliminary injunction (R. Doc. 3) is DENIED.

IT IS FURTHER ORDERED that Isaac's ADA and RA claims, as they relate to his November 2, 2025 ARP/ADA request for accommodation, against DPSC and his federal civil-rights individual-capacity claims against Young and Spears for deliberate indifference to his serious medical needs on October 15, 2025, be allowed to proceed pending further development.

New Orleans, Louisiana, this 18th day of September, 2026.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE